UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM LAWRENCE,

        Plaintiff,

v.                                              Case No.  8:18-cv-738-T-24 TGW

ACE AMERICAN INSURANCE
COMPANY,

        Defendant.
_____

USAA CASUALTY INSURANCE
COMPANY, individually and as equitable
and contractual subrogee of Benjamin
Wintersteen,

        Intervenor,

v.

ACE AMERICAN INSURANCE
COMPANY,

        Intervenor-Defendant.
_____/

## ORDER

       This cause comes before the Court on two motions: (1) ACE American Insurance

Company's ("ACE") Motion to Dismiss Lawrence's Second Amended Complaint (Doc. No. 74);

which Lawrence opposes (Doc. No. 77); and (2) ACE's Motion to Dismiss USAA Casualty

Insurance Company's ("USAA") Second Amended Complaint in Intervention (Doc. No. 73),

which USAA opposes (Doc. No. 76). As explained below, the motions are granted in part and

denied in part.

## I. Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Background[1]

Plaintiff William Lawrence and USAA allege the following in their second amended complaints (Doc. No. 71, 72): ACE issued a business auto policy to Jacobs Engineering Group, Inc./Jacobs Technology ("Jacobs"). (Doc. No. 63). On August 18, 2014, Jacobs' employee,

---

[1]The parties have agreed that the operative insurance policy in this case is located at Document Number 63. (Doc. No. 62, 63, 64, 65, 66, 68, 69).

Benjamin Wintersteen, caused a car accident that injured Lawrence.

At the time of the accident, Wintersteen was driving a car leased by Hertz, because Jacobs was in the process of transferring Wintersteen to work in Germany for Jacobs. Jacobs had taken possession of Wintersteen's personal car in order to transport it to Germany. Because Wintersteen still needed a vehicle for personal errands and to travel to and from work for Jacobs prior to his move to Germany, Jacobs paid for the car leased from Hertz that Wintersteen had been driving at the time of the accident. The Hertz receipt lists Wintersteen's name along with "Jacobs Technology" and states that Wintersteen represents that he is authorized to receive the CDP benefits offered to employees of Jacobs Technology.[2] (Doc. No. 72-1).

Prior to the lease of the car at issue, Jacobs and Hertz had entered into a Corporate Customer Agreement ("CCA"), in which Jacobs agreed to use Hertz as its rental car supplier. (Doc. No. 71-4, p. 2, 8). The CCA provides that Hertz will provide $100,000 in bodily injury coverage for Jacobs' employee-renters. (Doc. No. 71-4, p. 7). However, the CCA also provides that Jacobs, on behalf of itself and its employee-renters, rejects the inclusion of any supplementary insurance coverage in Hertz's rental agreements. (Doc. No. 71-4, p. 7).

Wintersteen did not get additional insurance coverage through Hertz for the leased car, because Jacobs instructed him not to get such coverage because Jacobs believed that the leased car had insurance coverage under the ACE insurance policy. According to Lawrence, "[r]epresentatives of Jacobs had been advised by representatives of [ACE] that the [ACE] policy would afford coverage for employees of Jacobs who were in a position like Wintersteen. Thus, Wintersteen and Jacobs both detrimentally relied on representations made by [ACE] that the

---

[2]CDP refers to Hertz's Customer Discount Program.

[ACE] policy would afford coverage for Mr. Wintersteen's use of the Hertz vehicle."  (Doc. No. 72, ¶ 17).

As a result of the car accident, Lawrence sued Wintersteen in state court.  Wintersteen had insurance coverage through his own insurance policy with USAA, and he also made a claim for coverage under ACE's insurance policy that was issued to Jacobs.  Wintersteen contended that he was an insured under the ACE policy because: (1) Jacobs provided Wintersteen with use of the leased car in conjunction with Wintersteen's employment activities for Jacobs; (2) the lease of the car was for the benefit of Jacobs and was part of its employment arrangement with Wintersteen; and (3) Wintersteen was entitled to insurance coverage based on promissory estoppel.  ACE denied Wintersteen a defense and coverage under the policy.

Thereafter, Lawrence, Wintersteen, and USAA (collectively referred to as "the Settling Parties") stipulated to an entry of a consent judgment to resolve Lawrence's claims from the car accident and to provide a vehicle under which part of the consent judgment could be collected from ACE.  Specifically, the Settling Parties intended that ACE would be required to pay the amount of the consent judgment that it was legally required to pay had it honored its coverage obligations under Jacobs' insurance policy.

The Settling Parties stipulated that Lawrence's damages from the car accident were $750,000, and they agreed to the entry of a $750,000 consent judgment in favor of Lawrence and against Wintersteen.  In partial satisfaction of the consent judgment, Hertz paid Lawrence $100,000, and USAA paid Lawrence $250,000.  Thus, $350,000 was paid by Hertz and USAA on Wintersteen's behalf.  In exchange for the $350,000 and an agreement not to execute against Wintersteen on the unpaid $400,000 remaining, Wintersteen assigned to Lawrence all of his

rights against ACE, including but not limited to, any and all of Wintersteen's insurance rights and benefits, as well as claims for attorney's fees, costs, and expenses. The Settling Parties also noted in their Settlement Agreement that they agreed that if ACE's policy did provide coverage for the accident, then ACE should have paid 97.09% of the $250,000 that USAA paid and that USAA should have only paid 2.91% of that amount.[3] (Doc. No. 71-3, p. 3).

As a result of the above, Lawrence has asserted two claims against ACE: (1) declaratory judgment of insurance coverage and payment of the remaining $400,000 in damages due under the consent judgment; and (2) insurance coverage based on promissory estoppel. Similarly, USAA has asserted four claims against ACE: (1) equitable contribution; (2) unjust enrichment; (3) declaratory judgment of insurance coverage and payment of $242,725 in damages; and (4) insurance coverage based on promissory estoppel. In response, ACE has filed the instant motions to dismiss.

### III.  ACE's Motion to Dismiss Lawrence's Second Amended Complaint

ACE moves to dismiss Lawrence's second amended complaint, arguing that: (1) Wintersteen was not an insured under the insurance policy at the time of the accident; and (2) Lawrence's promissory estoppel claim is not sufficiently pled. Accordingly, the Court will address each argument.

#### A.  Insured Under the Insurance Policy

ACE argues that Lawrence has not made sufficient allegations in the second amended

---

[3]USAA contends that ACE should have paid 97.09% of the $250,000 paid by USAA due to their pro rata shares of insurance coverages: ACE provided $10,000,000 of the total $10,000,000 (ACE) and $300,000 (USAA) combined coverages, which equals 97.09% of the combined coverages. Thus, USAA contends that ACE owes it $242,725. The Settlement Agreement contains a typographical error and states that 97.09% of $250,000 equals $242,275.

complaint to show that Wintersteen was an insured under the ACE insurance policy, and as such, his claim for declaratory judgment of insurance coverage and payment of $400,000 in damages fails. Lawrence responds that Wintersteen is an omnibus insured under any of the following three policy provisions: (1) Jacobs' Hired Autos; (2) Employees as Insureds; and/or (3) Employee Hired Autos. Accordingly, the Court will analyze each of these policy provisions.

### 1. Principles Governing Interpretation of Insurance Policies

The parties agree that California law applies in construing the parties' obligations under the ACE policy. (Doc. No. 74, p. 7; Doc. No. 76, p. 5; Doc. No. 77, p. 7). The California Supreme Court has explained the principles governing the interpretation of insurance policies:

> [The] goal in construing insurance contracts . . . is to give effect to the parties' mutual intentions. If contractual language is clear and explicit, it governs. If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], [courts] interpret them to protect the objectively reasonable expectations of the insured. Only if these rules do not resolve a claimed ambiguity do [courts] resort to the rule that ambiguities are to be resolved against the insurer. . . . To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection . . . . The existence of a material ambiguity in the terms of an insurance policy may not, of course, be determined in the abstract, or in isolation. The policy must be examined as a whole, and in context, to determine whether an ambiguity exists.

Minkler v. Safeco Ins. Co. of America, 232 P.3d 612, 616 (Cal. 2010)(quotation marks and internal citations omitted).

### 2. Jacobs' Hired Autos

First, Lawrence contends that the leased car at issue is a covered auto under the "Hired Autos" provision, which defines covered "Hired 'Autos'" as including only those autos leased,

hired, rented, or borrowed by Jacobs.  (Doc. No. 63-8, p. 14).  The policy goes on to state that an "insured" includes anyone "while using with [Jacobs'] permission a covered 'auto' [Jacobs] . . . hire[s] or borrow[s]."  (Doc. No. 63-8, p. 15).

ACE argues that Wintersteen, not Jacobs, rented the car involved in the accident, and as such, Wintersteen is not an insured under the "Hired Autos" provision.  Lawrence responds by pointing out that he has specifically alleged in the second amended complaint that Jacobs leased, hired, and/or rented the car involved in the accident.[4]  (Doc. No. 72, ¶ 27).

Furthermore, Lawrence alleges facts to support his contention that Jacobs leased, hired, and/or rented the car at issue, including the following: Jacobs provided Wintersteen with the use of the rented car in conjunction with his employment with Jacobs, because: (1) Jacobs took possession of Wintersteen's personal car to ship it to Germany where Wintersteen was being relocated for work; and (2) Wintersteen needed a car to get to and from work for Jacobs until his relocation to Germany.  Jacobs had an agreement with Hertz (the CCA) that Hertz would provide rental cars for Jacobs and its employees, and the car at issue was rented pursuant to the CCA. Additionally, Jacobs paid for the rental car at issue, some of Jacobs' information was on the rental documentation, and Wintersteen used the car to travel to and from work.

ACE's policy does not define "hire," and case law exists that supports Lawrence's argument that the underlying facts support the conclusion that Jacobs hired the car at issue.  For example, in Abrams v. Trunzo, 129 F.3d 1174 (11th Cir. 1997), the Eleventh Circuit applied California law to similar facts and found that the employer had hired the car at issue.

In Trunzo, an employee of the government was involved in a car accident while on a

---

[4]USAA's second amended complaint contains that same allegation.  (Doc. No. 71, ¶ 11).

temporary work assignment and while driving a rental car. See id. at 1175. The issue before the

court was whether the government-employer hired the rental car the employee was driving at the

time of the accident. See id. at 1177. The court stated that the employer could be deemed to

have hired the car if the employee acted as the employer's agent and with actual authority when

renting the car. See id. The court found that the employee exercised implied, actual authority to

rent the car and that the employer hired the car through the employee's actions. See id. In

coming to that conclusion, the court stated:

> [The employee's] sole reason for requiring the use of a rental car is
> a direct result of his military orders. His travel orders included
> specific instructions to rent a car from Holiday Payless Rent-A-Car.
> The car was reserved by the Scheduled Airline Traffic Office (SATO)
> at McClellan Air Force Base in California. Holiday Payless had
> negotiated an agreement with the United States to rent cars on special
> terms to Government employees on official business. . . . Though the
> Government reimbursed [the employee] for the cost of the rental car
> and gas and no direct billing occurred here, the existence of the
> [direct billing] option further illustrates the level of control that the
> Government had over the transaction, and over [the employee].
> Pursuant to that agreement, [the employee] indicated on the rental
> form that he was renting the car for official military business,
> relieving him of the responsibility of leaving a security deposit.
> California agency law mandates that [the employee] had implied,
> actual authority to hire the car, and that therefore the rental can be
> imputed to the government.

Id. at 1177–78.

Like Trunzo, Wintersteen rented the car in connection with his work for Jacobs. Jacobs

had an agreement with Hertz to supply rental cars to Jacobs and its employees. Additionally,

Jacobs was listed on a part of the rental agreement, and Jacobs paid for the rental car. As such,

Trunzo supports Lawrence's argument that Jacobs hired the rental car, and the "Hired Autos"

provision would make Wintersteen an insured because he was using the rental car with Jacobs'

permission. Cases in other states applying non-California law have come to the same conclusion. See Potomac Ins. Co. of Ill. v. Adams, 997 So. 2d 238, 240 (C.A. Miss. 2008)("Although the rental contract was filled out with [the employee's] name listed, it was clear that [the employer] was the true lessee of the vehicle. The car was rented solely for [the employer's] business purposes, and the rental was paid for entirely by [the employer]. As such, the vehicle was . . . "leased" by [the employer]."); Pawtucket Mut. Ins. Co. v. Hartford Ins. Co., 787 A.2d 870, 873 (N.H. 2001)("Under the common definition of 'hire' . . ., it is clear that [the employer], via [the employee], contracted and paid for the temporary use of the rental vehicle. A corporate entity can only operate through individuals. . . . The facts show that [the employer] had specifically authorized [the employee] to use his company credit card to rent the vehicle for his [vacation] to Florida."); Royal Indem. Co. v. Metropolitan Cas. Ins. Co. of New York, 128 N.W.2d 111, 112 (S.Dak. 1964)(finding that the employee was the agent of the employer when renting the car at issue, and thus the employer was the renter or lessee of the car, even though the employee's name was listed on the rental agreement as the renter, because the employer directed the employee to rent the car for the purpose of traveling for work and the rental car was paid for using a company-issued credit card).

The Court notes that ACE cites to a California case in which the court did not find that the employer hired the car at issue. In Continental Casualty Co. v. Hartford Accident & Indemnity Co., 213 Cal. App.2d 78, 80 (1963), the employee rented a car and was driving it for business purposes when he was involved in an accident. The car was rented in the employee's name and was invoiced to the employee at his home address. See id. at 89–90. The employer reimbursed the employee for the rental car charges. See id. at 80.

One of the issues before the court was whether the rented car was "hired" by the employer, because if it was, coverage was excluded under the insurance policy. See id. at 88. The insurance policy defined "hired automobile" as "an automobile used under contract in behalf of . . . the [employer]." See id. at 89. The court concluded that the rental car was not a car hired by the employer, stating:

> Thus it appears that [the employee] rented the automobile involved in his own name. There is no basis in the facts that when he did so he was acting for or with the consent of [the employer]. It would be consistent with the facts here stipulated to that [the employee] was to obtain transportation on his own account and personal responsibility and that his employer would not be responsible therefor, even though it might subsequently reimburse the employee for travel expenses. [The defendant insurance company] has referred us to no authorities holding that an automobile rented by the employee in his own name is a "hired automobile" as that term is defined in the policy under examination. In the light of the applicable principles of construction stated above [that ambiguities are resolved against the insurer and doubts about coverage will be construed in the most inclusive sense, for the benefit of the insured] and under the above facts found by the trial court, we therefore conclude that the automobile in question was not a hired automobile . . . .

Id. at 90 (internal citation omitted).

The Continental Casualty case is distinguishable from the instant case in three important respects. First, in the instant case, it is alleged that Wintersteen rented the car with Jacob's consent. Second, as explained above, the case law has grown and there are cases that conclude that an employer can be found to have hired a rental car even though the employee rents the car in his own name. Third, the Continental Casualty court stated that it came to its conclusion after considering principles of construction, including that ambiguities are resolved against the insurer and doubts about coverage will be construed in the most inclusive sense, for the benefit of the

insured.  Accordingly, the Court denies ACE's motion to dismiss to the extent that it contends

that Lawrence has not sufficiently alleged that the ACE policy provides coverage for the accident

under the "Hired Autos" provision.

### 3.  Employees as Insureds

Second, Lawrence argues that if Jacobs is found not to have hired the rental car, then the

rental car is a covered auto under Endorsement Number 77, which is titled, "EMPLOYEES AS

INSUREDS."  (Doc. No. 63-1, p. 104).  This Endorsement provides the following: "Any

'employee' of [Jacobs] is an 'insured' while using a covered 'auto' [Jacobs does not] own, hire,

or borrow in [Jacobs'] business or [Jacobs'] personal affairs."  (Doc. No. 63-1, p. 104).  The

policy defines "Non-owned 'Autos'" as "those 'autos' [Jacobs] do[es] not own, lease, hire, rent

or borrow that are used in connection with [Jacobs'] business."  (Doc. No. 63-8, p. 14).

ACE moves for dismissal, arguing that at the time of the accident, Wintersteen was not

using the rental car in connection with Jacobs' business.  ACE, however, bases this argument on

facts that are not alleged in the second amended complaint.  Instead, ACE relies on facts that

came to light during the underlying car accident case.

Lawrence contends that at the time of the accident, Wintersteen was using the rental car

in Jacobs' business or personal affairs, because Wintersteen had the rental car because Jacobs

had taken possession of Wintersteen's personal car to transport it to Germany for his job, and

Wintersteen needed a car prior to his relocation to Germany.  Thus, Wintersteen's use of the

rental car benefitted Jacobs by: (1) allowing Jacobs to relocate Wintersteen and his car to

Germany; and (2) providing Wintersteen with transportation to and from work prior to the

relocation.  Lawrence argues that even if Wintersteen was using the rental car for a personal

errand at the time of the accident, Wintersteen's use of the rental car at all times was tied to and related to his business relationship with Jacobs, thus bringing the accident within this coverage provision.

At this stage in the litigation, based on the facts alleged in the second amended complaint, the Court finds that Lawrence states a plausible claim for coverage under the "Employees as Insureds" provision (although ACE also makes a plausible argument that coverage does not exist). The Court notes that coverage under this provision exists if: (1) Jacobs did not rent the rental car, and (2) Wintersteen was using the rental car (a) in Jacobs' business affairs, or (b) in Jacobs' personal affairs. It is unclear to this Court what Jacobs' "personal affairs" can consist of, and that phrase is not defined in the insurance policy. Some courts have found that phrase to be ambiguous at the pretrial stage of proceedings. See Lincoln General Ins. Co. v. Gateway Security Services, 2007 WL 3203020, at *14 (E.D. Cal. Oct. 29, 2007)("The concept of 'personal affairs' of an entity is anomalous because an entity, although a 'person' in the eyes of the law, does not engage in 'personal activities.' This creates ambiguity."); Blais v. Hartford Fire Ins. Co.. 2011 WL 1303135, at *11 (D. Mass. Mar. 30, 2011)(evaluating the phrase "your business or personal affairs" and commenting that "a corporation cannot have 'personal affairs.'"); Robart v. Horvath, 2002 WL 185179, at *3–4 (C.A. Ohio 2002). Given the ambiguity and both parties' plausible interpretations, the Court denies ACE's motion to dismiss to the extent that it contends that Lawrence has not sufficiently alleged that the ACE policy provides coverage for the accident under the "Employees as Insureds" provision.

### 4. Employee Hired Autos

Third, Lawrence alleges in his second amended complaint that the leased car at issue is a

covered auto under Endorsement Number 283, which is titled, "EMPLOYEE HIRED AUTOS." (Doc. No. 63-7, p. 1). This Endorsement provides the following: "An 'employee' of [Jacobs] is an 'insured' while operating an 'auto' hired or rented under a contract or agreement in an 'employee's' name, with [Jacobs'] permission, while performing duties related to the conduct of [Jacobs'] business." (Doc. No. 63-7, p. 1).

ACE argues that Endorsement Number 283 does not provide coverage for the August 18, 2014 accident, because Endorsement Number 283, according to the policy documents, did not become effective until September 10, 2014—after the date of the accident. (Doc. No. 63-6, p. 23). Lawrence fails to respond to this argument, and as such, the Court deems his failure to respond as an acknowledgment that Endorsement Number 283 does not provide coverage for the accident. Accordingly, the Court grants ACE's motion to dismiss to the extent that it contends that its policy does not provide coverage for the accident under Endorsement Number 283.

### B. Promissory Estoppel

In Count II, Lawrence alleges insurance coverage for the accident based on promissory estoppel. Specifically, Lawrence alleges "[r]epresentatives of Jacobs had been advised by representatives of [ACE] that the [ACE] policy would afford coverage for employees of Jacobs who were in a position like Wintersteen. Thus, Wintersteen and Jacobs both detrimentally relied on representations made by [ACE] that the [ACE] policy would afford coverage for Mr. Wintersteen's use of the Hertz vehicle." (Doc. No. 72, ¶ 17).

Using promissory estoppel to create insurance coverage is available in a very narrow set of circumstances where to refuse to do so would sanction fraud or other injustice. See Ohio Cas, Ins. Co. v. Garden of Eat'N of Tampa, 2011 WL 3879512, at *7 (M.D. Fla. Sept. 2, 2011). In

order to do so, the plaintiff must allege the following: "an insurer or its agent misrepresents, even though innocently, the coverage of the insurance contract, or the exclusions therefrom, to an insured before or at the inception of the contract; and the insured reasonably relies thereupon to his ultimate detriment." Southtrust Bank and Right Equipment Co. of Pinellas County, Inc. v. Export Ins. Services, Inc., 190 F. Supp.2d 1304, 1311 (M.D. Fla. Feb. 19, 2002)(citations omitted).

ACE moves to dismiss Lawrence's promissory estoppel claim, arguing that it is not sufficiently pled.[5]  Specifically, ACE contends that there are not sufficient factual allegations regarding: (1) who at ACE spoke to whom at Jacobs, (2) when this conversation occurred, and (3) the specific details of the conversation.

The Court agrees that specific factual detail is lacking, but Lawrence should be permitted to conduct discovery before more specific factual information is required.  At this stage of the litigation, Lawrence has asserted sufficient allegations to put ACE on notice of his promissory estoppel claim.  Accordingly, the Court denies ACE's motion to dismiss Lawrence's promissory estoppel claim.

## IV.  ACE's Motion to Dismiss USAA's Second Amended Complaint

USAA has asserted four claims against ACE: (1) equitable contribution; (2) unjust enrichment; (3) declaratory judgment of insurance coverage and payment of $242,725 in damages; and (4) insurance coverage based on promissory estoppel.  ACE moves to dismiss all four claims asserted by USAA.  Accordingly, the Court will analyze each claim.

---

[5]Alternatively, ACE asks the Court to convert its motion to a motion for summary judgment as to the promissory estoppel claim.  Lawrence objects to converting the motion, arguing that more discovery is required.  The Court agrees with Lawrence that it is premature at this time to convert this portion into a motion for summary judgment, as Lawrence should be allowed to conduct additional discovery first.

### A.  Declaratory Judgment and Damages

USAA asserts a claim for declaratory judgment of insurance coverage and payment of $242,725 in damages.  This claim is based on the contention that Wintersteen was an insured under ACE's policy at the time of the accident, and USAA makes the same coverage arguments as made by Lawrence.  Specifically, USAA contends that Wintersteen was an omnibus insured under any of the following three policy provisions: (1) Jacobs' Hired Autos; (2) Employees as Insureds; and/or (3) Employee Hired Autos.

### 1.  Jacobs' Hired Autos and Employees as Insured Provisions

ACE moves to dismiss this claim, making the same arguments as it did in response to Lawrence's claim for declaratory judgment and damages.  ACE's motion and USAA's response as to two provisions—(1) Jacobs' Hired Autos and (2) Employees as Insureds—are nearly identical to the motion and response directed to Lawrence's claim.  As such, and for the same reasons, the Court denies ACE's motion to dismiss to the extent that it contends that USAA has not sufficiently alleged that the ACE policy provides coverage for the accident under those two provisions.

### 2.  Employee Hired Autos Provision

ACE's argument as to USAA's contention that the Employee Hired Autos provision applies is the same as was directed to Lawrence's contention that the Employee Hired Autos provision applies.  While Lawrence failed to respond to ACE's argument, USAA does respond, and therefore, the Court must analyze the Employee Hired Autos provision.

USAA contends that the leased car at issue is a covered auto under Endorsement Number 283, which is titled, "EMPLOYEE HIRED AUTOS."  (Doc. No. 63-7, p. 1).  This Endorsement

15

provides the following: "An 'employee' of [Jacobs] is an 'insured' while operating an 'auto' hired or rented under a contract or agreement in an 'employee's' name, with [Jacobs'] permission, while performing duties related to the conduct of [Jacobs'] business." (Doc. No. 63-7, p. 1).

ACE argues that Endorsement Number 283 does not provide coverage for the August 18, 2014 accident, because Endorsement Number 283, according to the policy documents, did not become effective until September 10, 2014—after the date of the accident. (Doc. No. 63-6, p. 23). In response, USAA argues that ACE has previously stated that whether Endorsement Number 283 was in effect at the time of the accident was "a factual issued that need[ed] to be resolved during discovery." (Doc. No. 60, ¶ 4). However, USAA takes ACE's statement out of context; the statement was made when the parties could not agree on the operative version of the ACE insurance policy. Since that time, the parties have agreed that the operative insurance policy has been filed on the docket at Document Number 63, and that document clearly states that Endorsement Number 283 did not become effective until September 10, 2014—after the date of the accident.[6] (Doc. No. 63-6, p. 23). Accordingly, the Court grants ACE's motion to dismiss to the extent that it contends that its policy does not provide coverage for the accident under

---

[6]The Court may consider the statements contained in Endorsement Number 283 even though the full insurance policy is not attached to USAA's second amended complaint, because the Court directed USAA not to attach the entire policy again due to it already being filed at Document Number 63. (Doc. No. 69). The parties agreed that the insurance policy filed at Document Number 63 was the operative insurance policy, they referred to it in their second amended complaints, and the insurance policy is clearly central to Lawrence and USAA's claims. See Patel v. Sepcialized Loan Servicing, LLC, 904 F.3d 1314, 1318 n.3 (11th Cir. 2018)(stating that a court can consider a document not attached to the complaint when the plaintiff refers to the document in the complaint, the document is central to the plaintiff's claims, and its contents are not in dispute).

Endorsement Number 283.

### B.  Equitable Contribution[7]

USAA asserts a claim for equitable contribution against ACE.  Specifically, USAA alleges that ACE's policy provides coverage for the accident, and as such, ACE should have paid 97.09% of the $250,000 that USAA paid to settle Lawrence's claim against Wintersteen.  As a result, USAA seeks payment from ACE of $242,725 of the $250,000 that USAA paid towards Lawrence's damages in the underlying state court lawsuit.

ACE moves to dismiss this claim, arguing that Florida does not recognize a cause of action for equitable contribution between co-insurers.  The flaw in this argument, however, is that Florida does not recognize a cause of action for equitable contribution by co-insurers *in order to recover defense costs.*  Liberty Mutual Fire Ins. Co. v. Wal-Mart Stores East, LP, 269 F. Supp.3d 1254, 1264 (M.D. Fla. 2017).  USAA is not seeking to recover its defense costs in the underlying litigation, and as such, this argument for dismissal has no merit.

Florida does recognize a cause of action for equitable contribution by co-insurers for the amounts the insurer paid to indemnify the insured.  See id.  As explained by one court:

> The doctrine of equitable contribution attempts to ensure that the burden of performing a common obligation is equally distributed between those who have the obligation.  When a party has paid in excess of its pro rata share of the obligation, it is entitled by law to contribution from the other parties for their share.

Id. (internal citations omitted).

In order to state a claim for equitable contribution, USAA must allege that it paid in

---

[7]The parties both agree that Florida law applies to this claim.  (Doc. No. 73, p. 14; Doc. No. 76, p. 4–5).

excess of its pro rata share of a common liability shared by USAA and ACE.  See id.; Zurich Am. Ins. Co. v. Southern-Owners Ins. Co., 248 F. Supp.3d 1268, 1291 (M.D. Fla. 2017).  In its second amended complaint, USAA alleges that it is seeking equitable contribution for the amount it paid in excess of its pro rata share to settle Lawrence's claim, because ACE was also obligated to provide coverage for Lawrence's claim.  As such, USAA has sufficiently alleged a claim for equitable contribution, and ACE's motion to dismiss this claim is denied.

### C.  Unjust Enrichment[8]

USAA asserts a claim for unjust enrichment against ACE.  Specifically, USAA alleges that by paying the $250,000 towards the settlement of Lawrence's claim against Wintersteen, USAA conferred a benefit upon ACE.  USAA further alleges that ACE accepted that benefit by not contributing any money towards the settlement of Lawrence's claim despite the fact ACE's insurance policy covered Lawrence's claim.  Therefore, USAA contends that it is inequitable and unfair for USAA to pay the entire $250,000, since both ACE and USAA insured Wintersteen on an equal basis.

ACE moves to dismiss this claim, arguing that USAA cannot assert an unjust enrichment claim because an express contract exists—namely, the ACE insurance policy sets forth ACE's obligations.  The flaw in ACE's argument, however, is that USAA is not a party to the ACE insurance policy, and as such, the existence of the ACE insurance policy does not bar USAA's unjust enrichment claim.  See Commercial Repairs & Sales, LLC v. Signet Jewelers Ltd., 2018 WL 3068067, at *2 (M.D. Fla. Feb. 20, 2018)(stating that "Florida law bars unjust enrichment

---

[8]It appears that USAA and ACE agree that Florida law applies to this claim.  (Doc. No. 73, p. 15; Doc. No. 76, p. 4–5).

claims only when *both* parties to the lawsuit are *also* parties to a written agreement that covers the same subject matter").  Furthermore, another court has allowed an unjust enrichment claim to proceed by one insurer against a co-insurer for amounts the plaintiff-insurer paid towards settlement of a claim allegedly covered by both insurers' insurance policies.  See National Fire Ins. Co. of Hartford v. FCCI Commercial Ins. Co., 2016 WL 501943, at *2 (M.D. Fla. Feb. 9, 2016).  Accordingly, the Court denies ACE's motion to dismiss USAA's unjust enrichment claim.

### D.  Promissory Estoppel[9]

USAA asserts a claim for promissory estoppel against ACE.  Specifically, USAA alleges that Jennifer Petr, the person at Jacobs responsible for travel logistics, told Wintersteen not to purchase additional insurance coverage for the rental car because ACE confirmed that insurance coverage for the rental car was provided by the ACE policy.  USAA further alleges that Wintersteen detrimentally relied on the alleged representations made by ACE.

USAA contends that its insurance policy that covered Wintersteen in the accident has a subrogation provision that allows USAA to assert this promissory estoppel claim against ACE. Specifically, USAA points to the following provision in its policy: "If [USAA] make[s] a payment under this policy and the person . . . for whom payment was made has a right to recover damages from another, [USAA] will be subrogated to that right."  (Doc. No. 71-1, p. 20 of 33). Thus, USAA contends that because it made a settlement payment to Lawrence on Wintersteen's behalf, and because Wintersteen has a right to recover payment from ACE under a promissory

---

[9]It appears that USAA and ACE agree that Florida law applies to this claim.  (Doc. No. 73, p. 16–17; Doc. No. 76, p. 15–19).

estoppel theory, USAA stands in the shoes of Wintersteen to assert a claim for promissory estoppel for the amount that USAA paid that should have been paid by ACE.

Additionally, USAA alleges that principles of equitable subrogation apply, which allows USAA to stand in the shoes of Wintersteen to assert a claim for promissory estoppel for the amount that USAA paid that should have been paid by ACE. In response, ACE moves to dismiss this claim, arguing that principles of equitable subrogation do not apply; ACE does not address contractual subrogation based on the USAA insurance policy.

There are two types of subrogation in Florida: (1) conventional or contractual subrogation, and (2) equitable subrogation. See Peninsula II Developers, Inc. v. Gryphon Construction, LLC, 208 So. 3d 1239, 1240 (Fla. 3d DCA 2017); Columbia Cas. o. v. Ker, Inc., 2008 WL 11338289, at *4 (M.D. Fla. Oct. 29, 2008). Both types of subrogation can be explained as follows:

> [S]ubrogation provides relief when one [party] satisfies the legal obligations of another. The party paying the debt of another, the subrogee, stands in the shoes of the subrogor and is entitled to all of the rights of its subrogor. The purpose of subrogation is to do justice without regard to form. The policy rationale behind subrogation is to prevent one person from being unjustly enriched by another person's loss.

Columbia Cas., 2008 WL 11338289, at *4 (quotation marks and citations omitted).

USAA has grounded its promissory estoppel claim on both types of subrogation, but differences exist between them. Conventional or contractual subrogation arises when the parties contractually agree that the party paying the debt will have the rights and remedies of the original creditor. See id. (citation omitted). An example of contractual subrogation is when an insurer expressly provides for the right of subrogation in its insurance policy. See Peninsula II , 208 So.

3d at 1240.  Contractual subrogation exists in this case, as USAA explicitly reserved such a right in its insurance policy issued to Wintersteen.  In this context, subrogation is not a separate cause of action; instead, contractual subrogation simply substitutes one party (the subrogee/USAA) for another party (the subrogor/Wintersteen) with respect to an existing lawful claim that the subrogor (Wintersteen) could have pursued.  See id.

Equitable subrogation, on the other hand, arises by operation of law after one party pays the debt of another.  See id.; Columbia Cas., 2008 WL 11338289, at *4.  Specifically, it arises from "the legal consequences of the acts and relationships of the parties."  Dade County School Board v. Radio Station WQBA, 731 So. 2d 638, 646 (Fla. 1999).  Like contractual subrogation, "the party discharging the debt stands in the shoes of the person whose claims have been discharged and thus succeeds to the rights and priorities of the original creditor."  Id. However, in order to establish a right to equitable subrogation, the following must be shown: "(1) the subrogee [USAA] made the payment [to Lawrence] to protect [its] own interest, (2) the subrogee [USAA] did not act as a volunteer, (3) the subrogee [USAA] was not primarily liable for the debt [to Lawrence], (4) the subrogee [USAA] paid off the entire debt [owed to Lawrence], and (5) subrogation would not work any injustice to the rights of a third party."  Id.

ACE argues that equitable subrogation is not appropriate in this case, because USAA did not pay the entire amount owed to Lawrence, given that $400,000 of Lawrence's damages remain unpaid.  The Court agrees that, because ACE remains potentially liable for the remaining $400,000 of Lawrence's damages, equitable contribution is not the appropriate vehicle for USAA to use.  Accordingly, the Court grants ACE's motion to dismiss to the extent that it argues that equitable subrogation is not available in this case.  However, USAA's promissory estoppel claim

remains due to contractual subrogation.

Next, ACE argues that USAA cannot stand in Wintersteen's shoes to pursue a promissory estoppel claim, because Wintersteen assigned all of his rights to bring suit against ACE to Lawrence via the Settlement Agreement. USAA responds that the Settling Parties specifically stated in the Settlement Agreement that the Settlement Agreement "is not intended to, and should not be construed as, a release or limitation in any manner of the rights of . . . [USAA] to pursue claims against [ACE]." (Doc. No. 71-3, p. 5, ¶ 7). The Settlement Agreement further provides that USAA expressly reserved all of its rights to recovery against ACE. (Doc. No. 71-3, p. 5, ¶ 7). The Court agrees with USAA that the Settlement Agreement did not extinguish USAA's contractual subrogation rights. Therefore, the Court denies ACE's motion to dismiss USAA's promissory estoppel claim brought pursuant to contractual subrogation.

## V. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     ACE's Motion to Dismiss Lawrence's Second Amended Complaint (Doc. No. 74) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to extent that ACE's policy does not provide coverage for the accident under Endorsement Number 283; otherwise, the motion is denied.

(2)     ACE's Motion to Dismiss USAA's Second Amended Complaint in Intervention (Doc. No. 73) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to extent that: (a) ACE's policy does not provide coverage for the accident under Endorsement Number 283; and (b) USAA's promissory estoppel claim

cannot be brought pursuant to equitable subrogation.  Otherwise, the motion is denied.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of November, 2018.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record