UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM LAWRENCE,

       Plaintiff,

v.                                                                   Case No. 8:18-cv-738-T-24 TGW

ACE AMERICAN INSURANCE
COMPANY,

       Defendant.
_____

USAA CASUALTY INSURANCE
COMPANY,

       Intervenor,

v.

ACE AMERICAN INSURANCE
COMPANY,

       Intervenor-Defendant.
_____/

**<u>ORDER</u>**

This cause comes before the Court after a trial on the issue of whether Jacobs Technology ("Jacobs") co-rented a vehicle rented by its employee, Benjamin Wintersteen, that was involved in a car accident. The resolution of that issue is necessary to determine whether Jacobs' automobile insurance policy issued by ACE American Insurance Company ("ACE") provides coverage for the accident. The Court held a three-day jury trial on the underlying factual issues that support the Court's ultimate determination regarding insurance coverage. As explained below, the Court finds that Jacobs co-rented the car involved in the accident, and therefore, ACE's policy provides coverage for the accident.

**I. Background**

In March of 2014, Jacobs offered Wintersteen a job that was to be performed in Germany. Wintersteen's job was connected to a government contract between the United States and Jacobs. Wintersteen was given an initial duty location of Tampa at the MacDill Air Force Base while his paperwork was being approved by the German government. Because Wintersteen would be relocating from New Mexico, he was given a $20,000 relocation allowance in order to assist him in moving his family and household goods, personal effects, and car to Germany. Wintersteen could choose how to spend the $20,000 relocation allowance as long as his specific expenditures were within the contractual guidelines authorized by the United States government, because the government would be reimbursing Jacobs for the reimbursements that Jacobs made to Wintersteen from the relocation allowance.

Jennifer Petr, a finance and accounting manager for Jacobs, recommended to Wintersteen that he ship his personal car to Germany prior to leaving Tampa and use part of his relocation allowance to rent a car in Tampa, because it was cheaper to rent a car in Tampa than to rent one in Germany and the shipping process took several weeks. Jacobs had an arrangement with Hertz to supply discounted rental cars to its employees, even if the rental car was to be used for personal, rather than business, purposes. Specifically Jacobs and Hertz had entered into a Corporate Customer Agreement ("CCA"), in which Jacobs agreed to use Hertz as its primary preferred rental car supplier. (Doc. No. 71-4, p. 2, 8). The CCA provided that Hertz would provide $100,000 in bodily injury coverage for Jacobs' employee-renters that rent a car for

business purposes.[1] The CCA also provided that Jacobs, on behalf of itself and its employee-renters, rejects the inclusion of any supplementary insurance coverage in Hertz's rental agreements.

While in Tampa, Wintersteen was driving rental cars from Hertz while his wife drove their personal car before it was shipped to Germany.[2] Wintersteen did not need a car to perform his job in Tampa, but he did need transportation to get to and from work (whether it be his personal car, a rental car, or a taxi/Uber/Lyft). Wintersteen's personal car was shipped to Germany on August 4, 2014.

On the morning of August 12, 2014, Wintersteen drove a Hertz rental car in Tampa to pick up orange juice and fruit for his sick daughter. Wintersteen intended to drop the orange juice and fruit at home and then go into work. However, on his way to the store, Wintersteen was involved in a car accident with William Lawrence. Wintersteen pulled out in front of Lawrence and caused Lawrence's car to flip over twice.

As a result of the car accident, Lawrence sued Wintersteen in state court in May of 2015. Wintersteen made a claim for coverage under ACE's commercial automobile insurance policy issued to Jacobs. ACE denied Wintersteen a defense and coverage under the policy.

Wintersteen had personal automobile insurance through USAA Casualty Insurance Company ("USAA"). There was also insurance coverage for the rental car through Hertz, which

---

[1] Hertz deemed that if Jacobs reimburses an employee for the cost of the rental, then the car was rented for business purposes.

[2] Wintersteen changed rental cars approximately every month while in Tampa, and he was in Tampa for approximately three months. Wintersteen left Tampa to relocate to Germany on August 18, 2014.

existed due to the CCA between Hertz and Jacobs.

In May of 2017, Lawrence, Wintersteen, and USAA (collectively referred to as "the Settling Parties") stipulated to an entry of a consent judgment to resolve Lawrence's claims from the car accident and to provide a means to collect part of the consent judgment from ACE. Specifically, the Settling Parties stated in their Settlement Agreement that they intended that ACE would be required to pay the amount of the consent judgment that it was legally required to pay had it honored its coverage obligations under the insurance policy.

The Settling Parties stipulated that Lawrence's damages from the car accident were $750,000, and they agreed to the entry of a $750,000 consent judgment in favor of Lawrence and against Wintersteen. In partial satisfaction of the consent judgment, Hertz paid Lawrence $100,000 and USAA paid Lawrence $250,000. Thus, $350,000 was paid by Hertz and USAA on Wintersteen's behalf. In exchange for the $350,000 and an agreement not to execute against Wintersteen on the unpaid $400,000 remaining, Wintersteen assigned to Lawrence all of his rights against ACE.

Thereafter, Lawrence filed a declaratory judgment lawsuit against ACE in state court. In March of 2018, Lawrence's declaratory judgment lawsuit was removed to this Court. In Lawrence's second amended complaint, he asserted two claims against ACE: (1) a claim for a declaratory judgment of coverage and damages, and (2) a claim for insurance coverage based on promissory estoppel.[3] (Doc. No. 72).

In May of 2018, this Court granted USAA's motion to intervene to pursue its related

---

[3]The Court granted ACE summary judgment on Lawrence's claim for insurance coverage based on promissory estoppel. (Doc. No. 114, p. 5–6).

claims against ACE. (Doc. No. 27). In USAA's second amended complaint in intervention, USAA asserted four claims against ACE: (1) equitable contribution; (2) unjust enrichment; (3) declaratory judgment of coverage and damages; and (4) insurance coverage based on promissory estoppel.[4] (Doc. No. 71).

All three parties—Lawrence, USAA, and ACE—filed motions for summary judgment on these claims. However, the Court found that genuine issues of material fact precluded summary judgment on all but the promissory estoppel claims. Specifically, the Court found that issues of material fact remained as to whether Jacobs co-rented the car Wintersteen was driving at the time of the accident (a necessary precondition for coverage under the Hired Autos provision of ACE's policy). Therefore, a trial was held to resolve these factual issues. The parties agreed that the decision as to whether coverage existed under the Hired Autos provision of the ACE policy was a legal decision for the Court, and the jury would be empaneled to resolve the factual disputes.

## II. Hired Autos Provision

The ACE policy was issued in California, and the parties agree that California law applies in construing the ACE policy. The California Supreme Court has explained the principles governing the interpretation of insurance policies:

> [The] goal in construing insurance contracts . . . is to give effect to the parties' mutual intentions. If contractual language is clear and explicit, it governs. If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], [courts] interpret them to protect the objectively reasonable expectations of the insured. Only if these rules do not resolve a claimed ambiguity do [courts] resort to the rule that ambiguities are to be resolved against the insurer. . . . To further ensure that coverage conforms fully to the objectively

---

[4]The Court granted ACE summary judgment on USAA's claim for insurance coverage based on promissory estoppel. (Doc. No. 114, p. 5–6).

5

> reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection . . . . The existence of a material ambiguity in the terms of an insurance policy may not, of course, be determined in the abstract, or in isolation. The policy must be examined as a whole, and in context, to determine whether an ambiguity exists.

Minkler v. Safeco Ins. Co. of America, 232 P.3d 612, 616 (Cal. 2010)(quotation marks and internal citations omitted).

The Hired Autos provision in the ACE policy defines covered "Hired 'Autos'" as including only those autos leased, hired, rented, or borrowed by Jacobs. (Doc. No. 63-8, p. 14). The ACE policy goes on to state that an "insured" includes anyone "while using with [Jacobs'] permission a covered 'auto' [Jacobs] . . . hire[s] or borrow[s]." (Doc. No. 63-8, p. 15).

There is no dispute that Wintersteen rented the rental car involved in the car accident. The issue in construing the Hired Autos provision is whether Jacobs co-rented the rental car that Wintersteen was driving at the time of the accident. The ACE policy does not define or offer guidance as to how to determine who, in fact, hired/rented the car at issue. Furthermore, there is very little California case law to aid in this determination, and the existing California case law is based on distinguishable facts.

ACE contends that in order to hire a vehicle, the hirer must have dominion and control over the vehicle. ACE contends that at all times, Wintersteen, not Jacobs, had dominion and control over the rental car.

This Court found in its summary judgment order that solely analyzing who had control over the vehicle is too limited a test in situations where the vehicle is claimed to have been hired at the direction of another or arranged for in significant part by another. (Doc. No. 114). Instead,

6

this Court found that a broader test that looks at the entire rental transaction should be used to determine who hired the vehicle. (Doc. No. 114). Specifically, this Court concluded the following:

> [W]hen applying the dominion and control test to determine who hired a vehicle, a court should not only consider who actually exercised dominion and control over the vehicle, but it should also consider who had control over (or significantly participated in) the rental transaction. Thus, if one arranges for another to rent a vehicle by significantly participating in the rental transaction and paying for or reimbursing part or all of the rental cost, then one can be deemed a co-renter. By being a co-renter, one has the right to exercise dominion and control over the vehicle, even if the co-renter does not choose to actually exercise that right.

(Doc. No. 114, p. 12).

### III. The Jury's Findings of Fact[5]

In order for the Court to determine whether Jacobs exercised dominion and control over the rental car involved in the accident and/or whether Jacobs had control over (or significantly participated in) the rental transaction, the Court asked the jury to resolve the factual disputes by answering ten questions. The jury found that after Jacobs shipped Wintersteen's personal car to Germany, Jacobs directed Wintersteen to rent a vehicle and directed him to rent the vehicle from Hertz. The jury also found that Jacobs did not place any restrictions on Wintersteen's use of the rental car involved in the accident.

The jury found that Jacobs directly, or through its corporate rules, procedures or guidelines, participated in the rental of the vehicle involved in the accident and instructed Wintersteen not to purchase additional insurance from Hertz. There was a factual dispute

---

[5]A copy of the jury's verdict (Doc. No. 164) is attached to this order.

7

regarding whether Jennifer Petr, Jacobs' finance and accounting manager, instructed Wintersteen not to purchase additional insurance for the rental car and/or whether she furnished and discussed Jacobs' document titled, "Global Rental Car Insurance Frequently Asked Questions," with Wintersteen. The jury found that Petr did not instruct Wintersteen not to purchase additional insurance from Hertz, nor did she discuss or furnish Wintersteen with a copy of Jacobs' "Global Rental Car Insurance Frequently Asked Questions."

### IV. The Court's Conclusions of Law

Based on the jury's factual findings, specifically that Jacobs did not place any restrictions on Wintersteen's use of the rental car involved in the accident, the Court finds that Jacobs did not exercise dominion and control over the rental car involved in the accident. However, also based on the jury's factual findings, the Court finds that Jacobs significantly participated in the rental transaction for the rental car involved in the accident.

Jacobs significantly participated in the rental transaction based on the following acts: Jacobs directed Wintersteen to rent a vehicle after his car was shipped to Germany, and Jacobs directed him to rent the vehicle from Hertz. Jacobs benefitted from the rental, as it provided a means for Wintersteen to get to and from work. Jacobs had pre-negotiated rental rates for its employees via the CCA, which applied to the rental transaction due to Wintersteen's use of, with Jacobs' permission, Jacobs' Customer Discount Program ("CDP") code. Jacobs' address was listed on the rental receipt along with Wintersteen's name.

Jacobs had pre-negotiated $100,000 of insurance coverage from Hertz for cars Jacobs' employees rented from Hertz when the cost of the rental car was reimbursed by Jacobs. Jacobs did, in fact, reimburse Wintersteen for the cost of the rental car. Jacobs, through its corporate

rules, procedures, or guidelines, also instructed Wintersteen not to purchase additional insurance for the rental car. Based on all of the above, the Court finds that Jacobs directed Wintersteen to rent the car involved in the accident and significantly participated in the rental transaction. Thus, Jacobs co-rented the car involved in the accident. Because Jacobs co-rented the car, it could have chosen to exercise dominion and control over the rental car, even though it did not choose to do so.

As previously stated, the Hired Autos provision in the ACE policy defines covered "Hired 'Autos'" as including only those autos leased, hired, rented, or borrowed by Jacobs. (Doc. No. 63-8, p. 14). The Court has found that Jacobs co-rented the rental car. The ACE policy goes on to state that an "insured" includes anyone "while using with [Jacobs'] permission a covered 'auto' [Jacobs] . . . hire[s] or borrow[s]." (Doc. No. 63-8, p. 15).

In the Court's summary judgment order, the Court stated the following:

> If it is determined that Jacobs had control over or significantly participated in the rental transaction, such will also be evidence that Jacobs gave Wintersteen permission to use the rental car. See Old Republic Ins. Co. v. Whitaker, 2011 WL 13234133, at *3 (W.D. Mo. Nov. 23, 2011).

(Doc. No. 114, p. 14). Since the Court has found that Jacobs significantly participated in the rental transaction, the Court concludes that Jacobs gave Wintersteen permission to use the rental car. This conclusion is further supported by the fact that Jacobs directed Wintersteen to rent the rental car after his personal car was shipped to Germany. Accordingly, the Court finds that Jacobs co-rented the rental car, and the Hired Autos provision of the ACE policy provides coverage for the accident.

### V. USAA's Claims Against ACE

When the Settling Parties entered into their Settlement Agreement in the underlying state court action, they agreed that if ACE's policy did provide coverage for the accident, then ACE should have paid 97.09% of the $250,000 that USAA paid and that USAA should have only paid 2.91% of that amount.[6] (Doc. No. 71-3, p. 3). USAA and ACE agreed at the pretrial conference and again during the trial (outside of the jury's presence) that if the Court found that the Hired Autos provision of the ACE policy provides coverage for the accident, then ACE would owe USAA 97.09% of the $250,000, which totals $242,725. Accordingly, the Court will enter judgment in favor of USAA and against ACE on Counts I (equitable contribution) and III (declaratory judgment and damages), and award USAA $242,725 in damages on those claims. Because USAA has obtained all of the relief that it has sought, the Court dismisses USAA's unjust enrichment claim.

### VI. Lawrence's Claim Against ACE

Because the Court found that Jacobs co-rented the rental car and that the Hired Autos provision of the ACE policy provides coverage for the accident, the Court finds that Lawrence is entitled to judgment on Count I of his complaint for declaratory judgment and damages. However, the amount of damages is still at issue.

During the trial (outside of the presence of the jury), the Court discussed with the parties whether Lawrence was entitled to damages in the amount of $400,000 from ACE or whether the

---

[6]USAA contends that ACE should have paid 97.09% of the $250,000 paid by USAA due to their pro rata shares of insurance coverages: ACE provided $10,000,000 of the total $10,000,000 (ACE) and $300,000 (USAA) combined coverages, which equals 97.09% of the combined coverages. Thus, USAA contends that ACE owes it $242,725. The Settlement Agreement contains a typographical error and states that 97.09% of $250,000 equals $242,275.

$400,000 should also be allocated between USAA and ACE, with Lawrence being awarded 97.09% of the $400,000 from ACE.[7] The parties stated that they would like an opportunity to brief this issue. Accordingly, the parties are directed to file a brief, no longer than 10 pages, on this issue by October 1, 2019.

**VII. Conclusion**

Based on the above, it is ORDERED AND ADJUDGED that:

(1) The Clerk is directed to enter judgment as follows:

    (a) The Clerk is directed to enter judgment in favor of USAA and against ACE on Counts I (equitable contribution) and III (declaratory judgment and damages). The Court declares that Jacobs co-rented the rental car involved in the accident with Lawrence, and Jacobs gave Wintersteen permission to drive the rental car. Therefore, the Hired Autos provision of the ACE policy provides coverage for the accident, and ACE should have paid $242,725 of the $250,000 contributed by USAA under the Settlement Agreement to settle Lawrence's claims in the underlying state court action. Therefore, USAA is awarded $242,725 in damages.

    (b) The Clerk is directed to enter judgment in favor of ACE and against USAA on Counts II (unjust enrichment) and IV (promissory estoppel).

(2) The Court defers entering judgment on Lawrence's claim against ACE. By October 1, 2019, the parties are each directed to file a brief, no longer than 10

---

[7]If allocation between USAA and ACE is appropriate with respect to the $400,000, the Court cannot require USAA to pay the 2.91% of the $400,000, because neither Lawrence nor ACE asserted such a claim against USAA.

pages, on the issue of the amount of damages that Lawrence is entitled to recover from ACE.

**DONE AND ORDERED** at Tampa, Florida, this 20th day of September, 2019.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record